## Richmond

## BENEFICIAL DISCOUNT COMPANY v.
## HOPE JOHNSON, ET AL.

February 4, 1975.

Record No. 740311.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman, and Poff, JJ.

*Robert E. Eicher (George R. Humrickhouse; Robert L. Musick, Jr.; Williams, Mullen & Christian*, on brief), for plaintiff in error.

*Louis A. Sherman (John M. Levy*, on brief), for defendants in error.

*Amicus Curiae: John W. Edmonds, III; John S. Barr; Mays, Valentine, Davenport & Moore*, on brief in support of Beneficial Discount Company.

Carrico, J., delivered the opinion of the court.

Beneficial Discount Company brought this action against

Hope Johnson and Inell H. Johnson to recover the balance due on a defaulted retail installment contract. Alleging a violation of the Truth in Lending Act (hereinafter the Act), the Johnsons prayed for a set-off of twice the amount of the precomputed finance charge included in the obligation secured by the contract.

■ In their plea of set-off, the Johnsons relied upon a contractual provision that, in event of prepayment of the obligation, the "Rule of 78's"[1] would be applied to compute refund of the unearned portion of the finance charge. The trial court held that mere reference, without more, to the "Rule of 78's" failed to satisfy and therefore violated the Act. The court allowed the Johnsons a set-off and accordingly reduced the amount awarded Beneficial. The sole question on appeal is whether the court erred in finding a violation of the Act.

The Act (15 U.S.C. §§ 1601 to -65) was adopted to assure meaningful disclosure of credit terms, thus enabling consumers to avoid uninformed use of credit. 15 U.S.C. § 1601. Under the Act, each creditor is required to disclose certain information to each person to whom credit is extended and upon whom a finance charge is or may be imposed. 15 U.S.C. § 1631. Failure to disclose required information renders the creditor liable to the debtor for twice the amount of any finance charge, within fixed minimum and maximum limits. 15 U.S.C. § 1640(a)(1).

While disclosure is required, in a transaction similar to the one now under consideration, of the amount of any finance

---

The "Rule of 78's" is explained in § 6.1-330.5 of the Code of Virginia:

"(a) The Rule of 78 is so named because the months of one year, i.e. one through twelve added together, total seventy-eight.

(b) To determine the amount of the rebate of unearned interest under the Rule of 78 on a loan where payment is anticipated:

(i) Determine the number of months over which the loan is to be repaid according to its terms. Write the numbers in sequence and add (for example, for a four-year loan write the numbers one through forty-eight). The total will be the denominator of a fraction to be determined below.

(ii) Determine the number of months remaining on the loan after payment is anticipated. Write in inverse sequence and add (for example, for a four-year loan anticipated after the third month, write the numbers forty-five back to one). The total will be the numerator of the fraction of which (i) above is the denominator.

(iii) Multiply the original amount of interest that would have been paid over the life of the loan by the fraction derived as above, such figure, so determined, is the amount to be rebated."

charge (15 U.S.C. § 1638(a)(6)), the Act itself does not require refund of the unearned portion of a finance charge. Neither does the Act require disclosure of the method of computing such refund, if refund is allowed by the terms of a particular credit transaction. The Act, however, grants the Board of Governors of the Federal Reserve System (hereinafter the Board) authority to prescribe regulations to carry out the purposes of the Act. 15 U.S.C. § 1604. Pursuant to this authority, the Board adopted Regulation Z. 12 C.F.R. § 226. Regulation Z implements the Act and reiterates the legislative purpose to assure disclosure of meaningful information with respect to the cost of credit. 12 C.F.R. § 226.1(a)(2).

Section 226.8(b)(7) of Regulation Z is pertinent to the issue in the present case. Where, as here, refund is allowed of the unearned portion of a precomputed finance charge, § 226.8(b)(7) of Regulation Z requires:

> "Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges. . . ." 12 C.F.R. § 226.8(b)(7).

While § 226.8(b)(7) of Regulation Z, where applicable, requires identification of the method of computing refund of the unearned portion of a finance charge, the section does not specify any particular means of such identification. The Board, however, in a formal interpretive rule upon the subject, has held that "the requirement of rebate 'identification' is satisfied simply by reference by name to the 'Rule of 78's' or other method, as applicable." 12 C.F.R. § 226.818(c).

In the present case, the contract provided that, in event of prepayment of the obligation, refund of the unearned portion of the finance charge would be computed by applying the "Rule of 78's." Beneficial contends that the contract satisfied the identification requirement of § 226.8(b)(7) of Regulation Z, as later implemented by the Board's formal interpretive rule.

The Johnsons contend, on the other hand, that the requirement of identification set forth in Regulation Z demands something more than mere reference to the "Rule of 78's" as a method of computing refunds of unearned finance charges. Given the purpose of the Act to assure "meaningful disclosure" of credit terms and of Regulation Z to provide "meaningful

information" concerning the cost of credit, the Johnsons argue, "the method of rebating unearned finance charges must be meaningfully identified" and must be "understood by the average consumer." While the "Rule of 78's," the argument continues, "may have meaning among persons regularly engaged in accounting, banking or in the business of purchasing commercial paper, it does not have any meaning to the average consumer, and therefore violates both the Act and Section 226.8(b)(7) of Regulation Z."

The gist of the Johnsons' argument is that the Board's formal interpretive rule, which permits mere reference by name to the "Rule of 78's" to satisfy the identification requirement of Regulation Z, is invalid. We do not agree with the argument.

As we have noted, the Act neither requires refund of unearned finance charges in event of prepayment nor specifies the method of computing such refund, if refund is permitted by the terms of a particular credit transaction. Congress, however, granted the Board authority to prescribe regulations to carry out the purposes of the Act. This authority included power to make "such classifications, differentiations, or other provisions" and to "provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes" of the Act, "to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 15 U.S.C. § 1604.

Pursuant to this authority, the Board adopted Regulation Z. Regulation Z includes § 226.8(b)(7), which requires "identification" of the method of computing refund of unearned finance charges, where refund is permitted by the terms of a credit transaction. The Board, of course, could, as the Johnsons contend it should, have required "explanation" or "description," rather than mere "identification," of the method of computing refunds. But where the Board has determined explanation or description necessary, it has required explanation or description. For example, on a related subject, § 226.8(b)(6) of Regulation Z requires a "description" of any penalty charge for prepayment of the principal of an obligation and an "explanation" of the method of computing such penalty.

In its formal interpretive rule, the Board differentiated the penalty for prepayment, which requires explanation and description, from the provision for refund of unearned finance

charges, which requires only identification of method. Thus, the Board's action displays a deliberate choice to require only identification, rather than explanation or description, in the case of refund methods.

In its formal interpretive rule, the Board also explained its reasons for requiring no more than identification of refund methods. The rule states, in part:

"Many State statutes provide for rebates of unearned finance charges under methods known as the 'Rule of 78's' or 'sum of the digits' or other methods. In view of the fact that such statutory provisions involve complex mathematical descriptions which generally cannot be condensed into simple accurate statements, and which if repeated at length on disclosure forms could detract from other important disclosures, the requirement of rebate 'identification' is satisfied simply by reference by name to the 'Rule of 78's' or other method, as applicable." 12 C.F.R. § 226.818(c).

In our opinion, the considerations that prompted the Board to issue its formal interpretive rule, which permits reference to the "Rule of 78's" to satisfy the identification requirement of Regulation Z, involved policy matters clearly within the scope of authority granted by Congress, consonant with the purposes of the Act. Indeed, this view was adopted by the Court of Appeals for the Ninth Circuit in *Bone* v. *Hibernia Bank*, 493 F.2d 135 (1974).

In *Bone*, the court specifically held that use of the "Rule of 78's" adequately identified the method of computing refund of the unearned portion of a finance charge in event of prepayment of an obligation subject to Regulation Z. After setting forth the considerations which prompted the Board to limit the identification requirement to "reference by name to the 'Rule of 78's' or other method," the court stated:

"We believe that it is precisely these kinds of policy decisions about the disclosure statement, requiring the weighing and balancing of the various available choices, that Congress entrusted to the Federal Reserve Board by granting it such broad powers. The conclusions thus reached by the Board are based upon its specialized experience and access to information, which is not likely to come to the attention of a particular judge in a given case. While reasonable minds may

differ as to which alternative would best suit the purposes of the Act, 'courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority.' [Citation omitted.] 'This court is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers.' [Citations omitted.]" 493 F.2d at 140.

. . . .

"In conclusion, we hold that Hibernia's disclosure statement was in compliance with the applicable section of Regulation Z, which required only 'identification' of the rebate method. This requirement was satisfied by reference to the Rule of 78's. . . ." 493 F.2d at 141.

Persuaded by the holding in *Bone,* we now hold that reference by name to the "Rule of 78's," in the contract under consideration, adequately identified the method of computing refund of the unearned portion of the finance charge in event of prepayment of the secured obligation. This disposes of the contention advanced by the Johnsons. Remaining, however, is a question raised by a ruling of the court below that "the regulation as promulgated by the Board . . . does not meet the requirements mandated" by the Act.

We construe the court's ruling to mean that the Board, in adopting § 226.8(b)(7) of Regulation Z and therein requiring only identification of rebate methods, exceeded the authority granted by the Act. Given this meaning, we disagree with the ruling.

*Mourning* v. *Family Publications Service, Inc.,* 411 U.S. 356 (1973), dealt with another section of Regulation Z allegedly adopted by the Board in excess of its authority. Upholding the validity of the disputed section, the Supreme Court stated:

"The standard to be applied in determining whether the Board exceeded the authority delegated to it under the Truth in Lending Act is well established under our prior cases. Where the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes

of the enabling legislation.' [Footnote reference and citations omitted.]" 411 U.S. at 369.

. . . .

"Given that some remedial measure was authorized, the question remaining is whether the measure chosen is reasonably related to its objectives. . . . That some other remedial provision might be preferable is irrelevant. We have consistently held that where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority." [Citations omitted.] 411 U.S. at 371-72.

Guided by these principles, we believe that the Board did not exceed its authority in adopting § 226.8(b)(7) of Regulation Z. We repeat the scope of the authority granted the Board: to prescribe regulations to carry out the purposes of the Act, the regulations to include such classifications, differentiations, or other provisions, and to provide for such adjustments and exceptions for any class of transaction, as in the judgment of the Board are necessary or proper to effectuate the purposes of the Act, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

The plain import and extent of the Board's authority cannot be ignored. Clearly, the Board had the power, given the policy considerations which prompted its decision, to require only identification of rebate methods. The Board thus, within the scope of its granted authority, found it necessary and proper, in order to facilitate compliance with the Act, to classify, differentiate, and adjust with respect to the class of transactions which includes refunds of unearned portions of finance charges.

For the reasons assigned, the judgment of the trial court will be reversed, the Johnsons' set-off disallowed, and final judgment entered here in favor of Beneficial in the full amount of its original claim.

*Reversed and final judgment.*